<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : **Civil Action No. 10-5060 (SRC)** |
| v. | : |
| | : **OPINION** |
| $7,599,358.09, PLUS ACCRUED INTEREST AND DIVIDENDS CONTAINED IN ACCOUNT NUMBER RF24073H5 IN THE NAME AND/OR BENEFIT OF LEADING EDGE GROUP HOLDINGS AT UBS FINANCIAL SERVICES, LOCATED AT 333 EARLE OVINGTON BLVD., SUITE 600, MITCHELL FIELD, NEW YORK, et al., | : |
| Defendants, *in rem*. | : |

**<u>CHESLER</u>, District Judge**

This matter comes before the Court upon five motions: 1) the motion to amend the verified statement of Claim and Answer to the Complaint by Andrew Cory [docket entry 49]; 2) the motion for the release of funds by Travelers Indemnity Company [docket entry 51]; 3) the motion to amend the Answer to the Complaint by Cooney & Conway [docket entry 64]; 4) the motion to strike twelve of the pending claims for lack of standing by the United States of America (the "Government") [docket entry 66]; and 5) the Government's motion to strike the Answer of West Bend Insurance Co. [docket entry 66]. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Court will grant the Government's motion to strike twelve of the

pending claims, rendering the remaining four motions moot.

**I.     BACKGROUND**

In this civil forfeiture action, the Government seeks to forfeit the contents of one Bank of America and two United Bank of Scotland ("UBS") accounts (the "Defendant Property") held in the name of Leading Edge Holdings, LLC ("Leading Edge"), an alter ego of its owner and CEO Allen Hilly ("Hilly").

In or about November 2004, Allen Hilly acquired two companies, Administrative Employers Group ("AEG") in Illinois and Personnel Management Solutions Inc. ("PMSI") in Connecticut.  Subsequently, in or about December 2005, Hilly acquired an additional company in Illinois, Employers Consortium Inc. ("ECI").  All three companies were Professional Employer Organizations ("PEOs") which were used by Hilly "to carry out two different schemes . . . to defraud and obtain money."  (Verified Compl. for Forfeiture *In Rem* ¶ 12, Sept. 30, 2010.)

First, at various times from 2001 through 2006, Hilly and his associates and coconspirators represented to clients and potential clients that they were able to provide valid workers' compensation insurance or a legal substitute therefor.  In reliance upon these false representations, the clients of Hilly's PEOs made payments to them in the belief that they were paying for, and would be provided with, workers' compensation insurance coverage.  Second, pursuant to federal law, AEG, PMSI, and ECI were obligated to withhold Social Security, Medicare, and income taxes from the paychecks of the employees of more than 100 client-companies and to pay these withheld amounts directly to the Internal Revenue Service on behalf of the employees.  The companies were also required to calculate and pay the employer portion

of payroll taxes. The PEOs, however, under Hilly's orders, transferred money they received for worker's compensation insurance and money they withheld from clients' employees' paychecks to the three bank accounts held in the name of Leading Edge, for which Allen Hilly was the sole signatory.

On December 13, 2006, Allen Hilly was arrested and the contents of the Defendant Property was seized. The Complaint, instituting this civil forfeiture action, avers that the contents of the three seized accounts were the proceeds of two fraud schemes and are forfeitable "pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) [as] property that is derived from proceeds traceable to a violation of 18 U.S.C. § 1343 . . . ." (Compl. at ¶ 6.) Subsequent to the Complaint's filing, fourteen claimants have come forward, all asserting ownership over portions of the Defendant Property.

As a result, on May 2, 2011, the Government filed the instant motion to strike twelve of the pending claims, for lack of standing, filed by: B.D. McClure & Associates, Ltd. ("McClure"); Cooney & Conway; Andrew Cory; Dynamic Wrecking & Excavation, Inc. ("Dynamic"); E. King Construction, Inc. ("King"); FAH Connections LLC; Hamilton Connections, Inc.; Judy's LLC; KDE Associates, LLC[1]; New Excel Interiors ("New Excel"); The Travelers Indemnity Company ("Travelers"); and West Bend Mutual Insurance Co. ("West Bend") (collectively, "Claimants"). The Government has also moved to strike West Bend's Answer because it was filed out of time. In addition, Andrew Cory has moved to amend his verified statement of Claim and Answer to the

---

[1] While Hamilton Connections, Inc., Judy's LLC, FAH Connections, LLC, and KDE Associates, LLC, all d/b/a Hamilton Connections, filed separate claims, only a single Answer and objection have been submitted on behalf of all four Claimants. As such, Hamilton Connections will be treated as one Claimant for purposes of this motion to strike.

Complaint to add ECI I as a claimant, Travelers has moved to release their owned portion of the seized funds, and Cooney & Conway has moved to amend its Answer to the Complaint to plead two affirmative defenses.

## II. DISCUSSION

### A. Government's Motion to Strike

The parties do not dispute that in order to stand before a court and contest a forfeiture action, a claimant must meet both Article III and statutory standing requirements. *See United States v. $487,825.00 in United States Currency*, 484 F.3d 662, 664 (3d Cir. 2007). "Article III standing requires the claimant to show an interest in the property sufficient to create a 'case or controversy,' while statutory standing requires claimants to comply with certain procedures." *United States v. Contents of Accounts Nos. 3034504504 & 144-07143*, 971 F.2d 974, 984 (3d Cir. 1992).

To perfect Article III standing, a potential claimant must demonstrate ownership or interest in the money sufficient to create a "case or controversy." *Munoz-Valencia v. U.S.*, 169 Fed. Appx. 150, 152 (3d Cir. 2006); *United States v. $39,557.00 More or Less, in United States Currency*, 683 F. Supp. 2d 335, 341 (D.N.J. 2010). Standing is shown where the claimant shows colorable ownership or colorable possession of the forfeited property. *Munoz-Valencia v. U.S.*, 169 Fed. Appx. at 52. To find the ownership or possessory interest colorable, a claimant must independently exercise some dominion or control over the property. *Id.* The Government contends that the Claimants lack constitutional standing to contest the forfeiture action because they are merely unsecured creditors who cannot show an ownership interest in the Defendant

4

Property.[2] In response, a number of Claimants aver that they are able to remain as claimants over the Defendant Property through the imposition of a constructive trust over portions of the Defendant Property's contents.[3] The parties do not dispute that property interests and rights are defined by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). As such, to determine whether either a constructive trust exists in favor Claimants, the Court must look to state law.

Claimants here fail to satisfy the elements of a constructive trust under state law.[4] "It is

---

[2] The Government additionally argues that the Claimants have not sufficiently identified their interest in the defendant property as required by Rule G(5)(a)(i)(B), and therefore have also failed to establish statutory standing. In this Circuit, a purported verified claim must contain a description of potential claimants' interest in the property. *United States*, 484 F.3d at 665. "[B]ald assertions of ownership" do not sufficiently identify a claimant's interest and hence do not satisfy the mandate of Rule G(5)(a)(i)(B). *United States v. $140,000.00 in United States Currency*, No. 09-3516, 2010 U.S. Dist. LEXIS 40562 at *12 (D.N.J. Apr. 26, 2010) (holding the statement of interest as insufficient since it contained no description of the claimant's interest in the defendant property beyond having a "propriety interest"). While the Court disagrees with the Government's contention that none of the Claimants adequately state their interest in the Defendant Property, the Court declines to issue judgment on the issue since the Claimants lack standing in the present matter under Article III of the United States Constitution.

[3] Claimant Cooney & Conway also contends that when it transferred funds to ECI, a bailment was created. The Government does not dispute that a person who gives his money to a third party has standing to contest the forfeiture of that money if the transfer of that money to the third party constituted a bailment under state law. *See* Stefan D. Cassella, Asset Forfeiture Law in the United States (2007). The parties agree that Illinois law applies, which defines a bailment as the "delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it." *American Casualty Co. v. Jackson*, 295 Ill. App. 3d 485, 490 (Ill. App. 1998). The key element in the creation of a bailment is that a bailor retain title to his funds even though they are in the possession of a third party for a period of time. *See* Cassella at 362-63. However, Claimant Cooney & Conway (as well as all Claimants) surrendered title of its funds to ECI when ECI commingled their money into a master account comprised of diverse funds to be transmitted elsewhere. As such, no bailment was created here and Cooney & Conway does not have standing to contest forfeiture under this theory.

[4] While the parties contend that the laws of different jurisdictions apply to the case at hand, they do not indicate any conflict between the laws of the differing jurisdictions regarding

hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992); *In re Ki Liquidation, Inc.*, No. 08-611, 2008 U.S. Dist. LEXIS 97522 at *21, (D.N.J. Dec.1, 2008). In order to effectively trace trust funds commingled with other funds, the beneficiary must do more than simply trace the trust proceeds into the trustee's bank accounts. *In re Supermarkets of Cheltenham, Inc.*, 1999 Bankr. LEXIS 455 at *14. Where trust property is commingled with other property of the trustee (or property belonging to other trust beneficiaries), the beneficiary must trace its own trust property through the trustee's various dealings with it. *See United States v. Mazza-Alaluf*, 2011 U.S. Dist. LEXIS at **12-14 (S.D.N.Y. Jan. 27, 2011) (claimant's constructive trust claim failed because he could not satisfy the tracing requirement of Illinois law; to trace, claimant must be able to distinguish property from "general mass of property of the same description" in defendant's possession); *One Silicon Valley*, 549 F. Supp. 2d at 955-56 (holding that each claimant asserting a constructive trust must be able to trace their assets and that it is not enough for multiple victims, collectively, to say that defendant's property is traceable to them as a group[5]); *In re*

---

the elements necessary to establish a constructive trust.

[5] In *United States of America v. $2,350,000*, 718 F. Supp. 2d 215, 231 (D. Conn. 2010), the court held that collective "pooling" of claims in considering the existence of a constructive trust is not *per se* improper. In that case, the court permitted the claimants to "pool" their claims since they proved by a preponderance of evidence that at least 99.6% of the looted funds had come from the claimants, no other entity had claimed that its funds were looted, and no one had alleged that the claimants erred in tracing the looted funds. *Id.* In addition, the claimants had stipulated how the recovered funds would be disbursed. *Id.* However, nothing in the current pleadings suggest that the Claimants here have the capacity to so conclusively trace their money into the three seized accounts, or that no additional victims can come forward and assert a claim over the Defendant Property.

*Supermarkets of Cheltenham, Inc.*, 1999 Bankr. LEXIS 455 at *5 (Bankr. E.D. Pa. Apr. 28, 1999) (concluding that claimant's interest in untraced trust funds is that of an unsecured creditor). Courts have recognized that, in the case of commingled cash, it is essentially impossible to perform such a tracing. *Id.* In *First Federal of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir. 1989), the beneficiary traced its trust funds into the debtor's commingled bank accounts yet the Sixth Circuit held the tracing insufficient.

> Since the purported constructive trust consisted of money, which had no extrinsic identifiable characteristics of its own, that was initially deposited and commingled into [one of the debtor's bank accounts] with unidentifiable funds received from innumerable and diverse other sources and daily redeposited and again commingled in [another of debtor's bank accounts], appellants' funds irretrievably lost their identity and 'tracing' became a futile pursuit . . . .

*Id.*; *compare with* *$2,350,000*, 718 F. Supp. 2d at 226 (holding a constructive trust where claimants established that a minimum of 99.6% of all the monies deposited into one account, and all of the money deposited into another account, were *definitively* traceable to them) (emphasis added).

Here, there is no doubt that the funds that Hilly's PEOs collected from the Claimants were commingled and pooled into one or more homogenized master accounts. Claimants have not sufficiently traced the alleged trust funds by merely identifying transfers from the commingled accounts to the Bank of America and UBS accounts. *See In re Supermarkets of Cheltenham, Inc.*, 1999 Bankr. LEXIS 455 at *5 (finding failure to trace trust funds where claimant neglected to trace trust funds beyond their initial deposit into the commingled account); *In re Ki Liquidation, Inc.*, 2008 U.S. Dist. LEXIS 97522 at *21. Because Claimants failed to show how much, if any, of such trust funds were actually transferred to the three Defendant bank

accounts, they have not traced funds beyond their initial deposit into the commingled accounts and, therefore, cannot establish their rights as trust recipients.

"It is firmly established that if a recipient of funds is not prohibited from using the funds as his own monies, a debtor-creditor relationship, not a trust relationship, exists." *In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 623 (S.D.N.Y. 2002); *see also In re Koreag, Controle et Revisio S.A.*, 961 F.2d 341, 353 (2d Cir. 1992). As explained by the treatise cited to by both the Government and Claimant Cooney & Conway,

> Persons who can trace their money into the bank account of a third person, but who have no right to withdraw that money, do not have standing to contest the forfeiture. Notwithstanding the provenance of the money, a person who surrenders his money to a third party by putting his money in the third party's bank account becomes, at most, an unsecured creditor with a cause of action against the account holder. So, for example, a person who hands his money over to a money remitter with instructions to transfer the money to a relative overseas has no standing to contest the forfeiture of the money remitter's bank account. The funds in that case are the remitter's funds: it is for the remitter to contest the forfeiture, not the customer, and the forfeiture of those funds does nothing to extinguish the debt the remitter owes to the customer.

Here, the Claimants contracted with the Hilly PEOs to pay taxes and provide insurance, and the PEOs were under no special duty to segregate the funds from its general account. In surrendering their money to the Hilly's PEOs the Claimants lost any ability to withdraw their money or control its use. As such, the Claimants in this case are unsecured general creditors of the seized property who have no standing to challenge the property's seizure. *See United States v. Kahn*, 129 F.3d 114 (2d Cir. 1997); *United States v. One-Sixth Share*, 326 F.3d 36, 41 (1st Cir. 2003); *United States v. $20,193.39*, 16 F.3d 344, 346 (9th Cir. 1994).

However, as victims of Hilly's fraudulent conduct, Claimants can still be recompensed

for their losses through a petition for remission with the Department of Justice.  By moving to strike, the Government has indicated that it is simply trying to ensure that the division of the seized funds will be fair and equitable amongst all of Andrew Hilly's victims.  (Government's Repl. Br. at 2, July 18, 2011.)  The Government has made clear that it has no intention of keeping the forfeited Defendant Property and that once the claims have been resolved, it intends to distribute the funds to the victims through the remission process.  (Government's Repl. Br. at 2.)

    **B.**    **Remaining Motions**

Because this Court grants the Government's motion to strike twelve of the pending claims for lack of standing, Andrew Cory's motion to amend,[6] Cooney & Conway's motion to amend, Travelers' motion to release funds, and the Government's motion to strike West Bend's Answer are moot.

**III.**    **CONCLUSION**

For the foregoing reasons, the Government's motion to strike is granted.  An appropriate form of order will be filed together with this Opinion.

                                             s/Stanley R. Chesler
                                             STANLEY R. CHESLER
                                             United States District Judge

DATED: August 15, 2011

---

    [6] Andrew Cory's motion to add ECI I as a claimant is moot because ECI I's sole basis of standing - that payments it made to Leading Edge were diverted by Hilly into his seized personal bank accounts - is analogous to the other twelve Claimants whose claims are stricken from this case.