**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | **Civil Action No. 10-5060 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| $7,599,358.09, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER**, District Judge

This is a civil forfeiture action involving money seized by the United States of America (the "Government") from three bank accounts which had been held in the name of Leading Edge Group Holdings, LLC ("Leading Edge"),[1] a company owned by Allen Hilly. The seized money, which is named as the Defendant in this *in rem* action, will hereinafter be referred to as the "Leading Edge accounts" or the "Defendant property." After this action was initiated by the Government to forfeit the Defendant property, various claims were filed by claimants asserting ownership over portions of the Defendant property. All but one those claims were stricken for lack of standing. The sole remaining claim belongs to Claimant the Director of Insurance for the State of Illinois, acting in his capacity as Liquidator of two Illinois companies, Administrative Employers Group ("AEG") and Employers Consortium Inc. ("ECI"), also owned by Hilly. (The Claimant will be referred to in this Opinion as the "Liquidator.")

---

[1] Specifically, the accounts which together form the *res* at issue in this action are $7,599.358.09 contained in UBS Financial Services ("UBS") account, $6,932,966.44 contained in another UBS account, and $906,471.21 contained in a Bank of America account.

The matter presently before the Court focuses on the merits of that remaining claim. The Government and the Liquidator have cross-moved for summary judgment on the Liquidator's claim.[2] For the reasons expressed below, the Court will deny the Liquidator's motion for summary judgment and grant summary judgment in favor of the Government.

I.    **BACKGROUND**

The material facts of this case are undisputed.  In brief, they are as follows:

Allen Hilly acquired two Illinois companies, AEG and ECI, in 2004 and 2005, respectively.  These companies were Professional Employer Organizations ("PEOs"), which means that they were engaged in the business or performing employment-related services, such as managing payrolls, collecting and remitting employment-related taxes and obtaining workers' compensation insurance.  AEG and ECI would contract with client companies to collect tax withholdings from the wages of the clients' employees (i.e., trust fund taxes) as well as the employer portion of payroll taxes owed, with the obligation to then pay those trust fund taxes and payroll taxes to the IRS on behalf of the clients.  AEG and ECI also represented to clients that they were engaged in the business of providing workers' compensation insurance, or a legal substitute therefor, and accordingly collected payments from clients led to believe they were buying workers' compensation coverage.  In reality, AEG and ECI were not able to provide workers' compensation coverage, and they did not remit the trust fund and payroll tax monies to the IRS.

---

[2] The Government and Liquidator each filed dispositive motions on January 25, 2013, but the Government moved to dispose of the Liquidator's claim for lack of standing .  Because the Court determined, on review of the Government's papers, that the relief sought required the Court to consider the merits of the claim, it exercised its authority under Federal Rule of Civil Procedure 12(d) to convert the Government's motion into a motion for summary judgment, upon appropriate notice to the litigants.  See April 24, 2013 Order [docket entry 123].

Instead, Hilly used AEG and ECI, together with his New Jersey company Leading Edge, to perpetrate two fraudulent schemes on the clients of these companies. In one scheme, Hilly and his companies made false representations concerning workers' compensation coverage, and collected money from clients based on those misrepresentations, up to and after Hilly's arrest in December 2006 related to the fraudulent scheme.  Through 2006, payments made by clients of AEG and ECI for workers' compensation insurance were wire-transferred from accounts held by AEG and/or ECI to two UBS bank accounts held in the name of Leading Edge.  In the other scheme, Hilly directed AEG and ECI not to transfer to the IRS the monies representing the trust fund and payroll taxes owed by AEG and ECI clients but rather to divert those monies to a Bank of America bank account held in the name of Leading Edge.  Those monies were sometimes further diverted by causing wire transfers to be sent from the Leading Edge Bank of America account to the Leading Edge UBS accounts.  The diversion of tax monies held by AEG and ECI on behalf of clients occurred from February 2006 through at least December 2006, when Hilly was arrested.  Hilly diverted over $15 million dollars in wrongful wire transfers from the AEG and ECI bank accounts in Illinois to the Leading Edge accounts in New Jersey.  The UBS and Bank of America accounts described here were seized upon Hilly's arrest.  The criminal action against Hilly abated due to his death, and the Government filed the instant civil forfeiture action on September 30, 2010.

On December 8, 2010, the Liquidator filed his claim in this action.  Of relevance to the Liquidator's claim, AEG and ECI were found by an Illinois state court to be transacting in the unauthorized business of insurance and to be insolvent.  By that same order, entered on April 21, 2008, the Circuit Court of Cook County, Illinois affirmed the Director of Insurance of the State

of Illinois, i.e., the Liquidator, as receiver and liquidator for ECI and AEG.  In this role, and by

the terms of the April 21, 2008 Order, the Liquidator, among other powers granted by the order,

"is vested by operation of law with the title to all property, contracts and rights of action of AEG

and ECI" and "authorized to deal with the property, business and affairs of AEG and ECI."

(Basil Decl., Ex. 1.)  The Liquidator filed a civil suit in Illinois state court against Leading Edge

to recover the money wrongfully transferred from the AEG and ECI accounts to the Leading

Edge Accounts.   By order of May 27, 2009, the Liquidator obtained default judgment against

Leading Edge in the amount of $14,267,007.08, and the judgment was registered in New Jersey

on July 17, 2009.   The Liquidator's claim on the Defendant property consists of the amount of

that judgment, plus interest.


II.      DISCUSSION

   A.  Standard of Review

   Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when the

moving party demonstrates that there is no genuine issue of material fact and the evidence

establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could

return a verdict for the non-movant, and it is material if, under the substantive law, it would

affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In

considering a motion for summary judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

### B.  Summary of Arguments

The Government seeks to forfeit the Defendant property pursuant to 18 U.S.C. § 981(a)(1)(C), which provides, in relevant part, that property "which constitutes or is derived from proceeds traceable to  . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)" shall be subject to forfeiture.  "Specified unlawful activity" within the meaning of 18 U.S.C. § 1956(c)(7) includes wire fraud, in violation of 18 U.S.C. § 1343.  The civil forfeiture statute contains a relation-back provision, which provides that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 18 U.S.C. § 981(f); see also United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991) (holding that under 18 U.S.C. § 981(f), "the government acquires its interest in the defendant's forfeited property at the time of the commission of the criminal acts giving rise to the forfeiture.").  The Government has argued that the monies comprising the Defendant property originated from the two fraudulent schemes perpetrated by Hilly through his PEOs, including AEG and ECI, and are directly traceable to the wire transfers made from the AEG and ECI accounts to the Leading Edge accounts, in violation of 18 U.S.C. § 1343.  Apart from arguing that it is entitled to forfeit

6

the Defendant property, the Government contends that the Liquidator's claim cannot even be considered by the Court because, according to the Government, the Liquidator lacks standing to contest the forfeiture of the Leading Edge accounts.

The Liquidator asserts that it has standing and seeks to defeat the forfeiture on three main grounds.  First, he argues that the Defendant property is not subject to forfeiture because this forfeiture action is barred by the statute of limitations.  Second, he contends that the action is barred by operation of reverse preemption under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. Third, the Liquidator argues that as the court-ordered representative of the rights and property interests of AEG and ECI, he is the "innocent owner" of the Defendant property under 18 U.S.C. § 983(d)(2) and thus, pursuant to 18 U.S.C. § 983(d)(1), his interest in the Defendant property cannot be forfeited.

### C.  Standing of Liquidator To Challenge Forfeiture

Before reaching the merits arguments as to forfeitability, the Court notes that the Government has moved to strike the Liquidator's claim for lack of Article III and statutory standing.  To establish standing, a claimant in a forfeiture action must "show an interest in the property sufficient to create a 'case or controversy'" under Article III of the Constitution as well as demonstrate that he has complied with statutory requirements for contesting a civil forfeiture action.  United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 150 n.9 (3d Cir. 2003). In forfeiture cases, "[c]ourts generally do not deny standing to a claimant who is either the colorable owner of the res or who has any colorable possessory interest in it."  United States v. Contents of Accounts Nos. 3034504504 & 144-07143, 971 F2d 974, 985 (3d Cir. 1992). [3]  "[A]

---

[3] Statutory standing, unlike the Article III requirement which focuses on the claimant's interest in the seized property, is established if a claimant complies with procedural requirements, as set forth in Supplemental Rule C(6) and 18 U.S.C. § 983(a)(4)(A).  Contents of Accounts Nos. 3034504504 & 144-07143, 971 F.2d at 984 & n.7

colorable ownership interest 'may be evidenced in a number of ways including showings of actual possession, control, title and financial stake.'" United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003); see also Munoz-Valencia v. United States, 169 F. App'x 150, 152 (3d Cir. 2006) (holding, in the forfeiture context, that colorable ownership or possessory interest generally requires a showing that claimant exercised dominion or control over the property).

The Government argues that the Liquidator has failed to demonstrate that he has an interest in the Defendant property sufficient to create standing because he cannot demonstrate that he is an innocent owner under the civil forfeiture statute.  This argument, however, conflates the requirements of standing with the ultimate merits of the Liquidator's affirmative defense to defeat forfeiture.  The jurisprudence on civil forfeiture cases makes clear that the threshold requirement of a claimant's standing is not rigorous and does not depend on proof of the underlying merits of the claim.  One Lincoln Navigator 1998, 328 F.3d at 1013.  In the forfeiture context, federal courts have held that "state law determines whether [a claimant] has a property interest but federal law determines whether or not this interest can be forfeited."  United States v. Hooper, 229 F.3d 818, 820 (9th Cir. 2000); United States v. Premises Known as 7725 Unity Ave. North, Brooklyn Park, Minn., 294 F.3d 954, 956-57 (8th Cir. 2002) (distinguishing between standing to contest forfeiture and merits of claim and holding that state law defines whether claimant has sufficient ownership interest to create a case or controversy); see also Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

---

(distinguishing between Article III standing and statutory standing in forfeiture case); see also United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664 (3d Cir. 2007) (setting forth procedural requirements to establish statutory standing in civil forfeiture case).  The Government has not argued that the Liquidator has failed to meet procedural requirements, specifically the timely filing of a verified statement of interest. United States v. $487,825.00, 484 F.3d at 664. Thus, the Court limits its standing analysis to the challenge raised by the Government with regard to the Liquidator's ownership interest in the Defendant property sufficient to create a case or controversy, as required by Article III.

Accordingly, to determine whether the Liquidator has standing (derived from AEG and ECI), that is, has a colorable interest in the Defendant property, the Court must look not to the civil forfeiture statute but instead to the governing state law which the Liquidator maintains creates his property interest. Under the terms of the April 21, 2008 Order of the Illinois state court, the Liquidator was granted all "property, contracts and rights of action of AEG and ECI." By the terms of that Order appointing him the Liquidator of AEG and ECI and by operation of Illinois statutory law, the Liquidator stands in the shoes of those insolvent companies. See 215 Ill. Comp. Stat. 5/193. It is uncontested that the Defendant property was wrongfully diverted from the AEG and ECI accounts to the Leading Edge accounts. In other words, prior to the time Hilly essentially stole the money, the seized funds were in the possession and control of AEG and/or ECI. Because AEG and ECI have at least a colorable ownership interest in the funds constituting the Defendant property based on their possession and control over the funds prior to the wire transfers, the Liquidator assumes this same interest and succeeds to the rights and remedies of AEG and ECI. The Court finds that the Liquidator has met the threshold requirement of demonstrating that he has standing to contest the forfeiture, and accordingly denies the Government's motion to strike the Liquidator's claim insofar as it is based on those grounds.

This threshold demonstration of an interest in the Defendant property does not, however, mean the Liquidator prevails. The Court must now consider the parties' cross-motions for summary judgment concerning the forfeitability of the seized property. Consistent with the jurisprudence that federal law governs whether a claimant's interest in the property is sufficient to defeat forfeiture, the Court must turn to the forfeiture statute to determine, first, whether the

Government has, in the first instance, established that the Defendant property is subject to forfeiture under § 981, and second, to determine whether the Liquidator has met his summary judgment burden of demonstrating that the Government cannot prevail on this civil forfeiture action.

### D.  Forfeitability of Property

In a civil forfeiture action brought under 18 U.S.C. § 981, the Government bears the burden of proving the forfeitability of the property by a preponderance of the evidence.  18 U.S.C. § 983(c). Insofar as it relates to the facts of this case, the cause of action created by § 981 requires the Government to demonstrate that Defendant property is traceable to the wire fraud committed by Hilly in violation of 18 U.S.C. § 1343, which is the criminal offense giving rise to the forfeiture.  The uncontroverted facts in the record clearly support the Government's burden of demonstrating that the Defendant property is forfeitable.  The Defendant property consists of money deposited into the Leading Edge accounts by Hilly's wrongful wire transfers from the accounts of AEG and ECI as part of his workers' compensation and tax fraud schemes, as described above. The Liquidator, in fact, concedes that the seized funds are traceable to Hilly's act of taking the contents of the AEG and ECI accounts and wiring them to the Leading Edge accounts. Pursuant to § 981(f), the Government's interest relates back to the time at which the underlying criminal act was committed.  As such, the Government has demonstrated that it acquired an interest in the Defendant property at the time of the diversion of funds held in the Illinois accounts of AEG and ECI to the Leading Edge accounts in New Jersey.  The Liquidator concedes that the transfers occurred at points in time through 2006 and as late as December 2006 when Hilly was arrested.

10

The burden now shifts to the Liquidator to demonstrate why, in spite of the Government's adequate demonstration that the Defendant property may be forfeited as a matter of law, the forfeiture action must be defeated.

**E.  Liquidator's Challenges to Forfeiture**

    1.  <u>Statute of Limitations</u>

The Liquidator maintains that this action, filed on September 30, 2010, is time barred under the applicable statute of limitations to civil forfeiture actions.  The statute provides in relevant part that

> No suit or action to recover . . . any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later . . . .

19 U.S.C. § 1621 (emphasis added).  Focusing exclusively on the clause providing that an action may be instituted within two years of the discovery that the targeted property was involved in an offense giving rise to forfeiture, the Liquidator argues that this suit is untimely because the Government knew of Hilly's wire fraud at least as early as December 12, 2006, when a seizure warrant for the Defendant property was issued.  The Liquidator, however, misreads the statute.

The statute expressly provides for "two windows" within which the Government may file a civil forfeiture action.  <u>United States v. 5443 Suffield Terrace, Skokie, Illinois</u>, 607 F.3d 504, 507 (7th Cir. 2010).  The language makes clear that the Government may initiate such an action within five years of discovering the alleged offense itself or within two years of discovering that the property to be forfeited was involved in the offense, "*whichever was later*."  19 U.S.C. § 1621 (emphasis added); <u>see also</u> <u>United States v. Kozeny</u>, No. 05 CR 518 SAS, 2011 WL

1672473, at *3 n.33 (S.D.N.Y. Apr. 29, 2011) (stressing that the statute provides two time periods in which a civil forfeiture action may be commenced).   Though it originally provided only for a five-year statute of limitations, the statute was amended in 2000 for the purpose of *enlarging* the time in which the government may commence a civil forfeiture action . . . ." Kozeny, 2011 WL 1672473, at * 3 n.33 (quoting United States v. Twenty-seven Parcels of Real Property Located in Sikeston, Scott County, Mo., 236 F.3d 438, 440 (8th Cir. 2001)).

The record of the case at bar shows that the alleged offense of wire fraud was discovered at some point between February 2006, when Hilly began diverting tax monies to the Leading Edge accounts, and December 2006, when he was arrested and the funds were seized.   Assuming discovery at the earliest point along this spectrum, the Government filed this civil forfeiture action within the five years allowed by the statute of limitations.   The Liquidator has failed to show that this action is untimely.  See Gruber v. Price Waterhouse, 911 F.2d 960, 963 (3d Cir. 1990) (holding that the statute of limitations is an affirmative defense and the burden of establishing its applicability to a claim rests with the party raising the defense).[4]   Accordingly, his motion for summary judgment disposing of the case as time-barred will be denied.

2.  McCarran-Ferguson Act

Belatedly, in opposition to the Government's supplemental briefing requested by the Court, the Liquidator raises for the first time the argument that this entire civil forfeiture action is precluded by the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq.  The statute, which effects a

---

[4] The Liquidator also argued, in a supplemental letter brief filed with the Court, that this action is untimely pursuant to a recent Supreme Court decision, which was issued after briefing on the Liquidator's motion for summary judgment had been completed.  That decision, Gabelli v. SEC, ___ U.S. ____, 133 S.Ct. 1216 (Feb. 27, 2013) , is completely inapplicable to the case at bar.  It concerned whether courts should read a discovery rule into the statute of limitations at issue in that case, 28 U.S.C. § 2462, a statute which does not govern here.

reverse-preemption of federal laws by state laws in limited circumstances, provides in pertinent part as follows:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b); see also Suter v. Munich Reinsurance Co., 223 F3d 150, 160 (3d Cir. 2000) (discussing reverse preemption of federal statute by a New Jersey insurance statute under 15 U.S.C. § 1012(b)).  The Third Circuit has held that "[u]nder § 1012, state laws reverse preempt federal laws if (1) the state statute was enacted 'for the purpose of regulating the business of insurance,' (2) the federal statute does not "specifically relate to the business of insurance,' and (3) the federal statute would 'invalidate, impair, or supersede' the state statute."  Suter, 223 F.3d at 160 (citing U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 501 (1993)).

The McCarran-Ferguson Act, according to the Liquidator, prohibits interference by the federal government with a state's regulation of insurance.  As such, the Liquidator contends, because at least some of the Defendant property consists of premium payments made by clients of AEG and/or ECI for the ostensible purpose of securing workers compensation insurance, a fact the Liquidator maintains was "decided as a matter of law" by the state court of Illinois, the Government may not thwart the Liquidator's efforts to regain possession of the premium payments in order to satisfy insurance obligations to the defrauded clients.  In other words, the Liquidator takes the position that the federal civil forfeiture statute, 18 U.S.C. § 981, as the Government seeks to apply it in this action, would impair his duties and obligations under Illinois insurance law as Liquidator of two insolvent Illinois companies that had been engaged in

the business of providing insurance coverage.  He argues, then, that the Court should find the

civil forfeiture action barred under McCarran-Ferguson reverse preemption.

      Apart from its untimeliness, as it was not raised in the Liquidator's fully briefed motion

for summary judgment, the argument is unavailing on the merits for a number of reasons.  As the

Government correctly points out, the Liquidator identifies no statute enacted by the State of

Illinois which would be impaired by an Act of Congress, as required, at a minimum, for

McCarran-Ferguson to apply.  Without any development of this argument by the Liquidator, the

Court cannot conduct a meaningful reverse preemption analysis. See, e.g., Davister Corp. v.

United Republic Life Ins. Co., 152 F.3d 1277, 1280 n. 2 (10th Cir. 1998) (observing, with regard

to reverse preemption under the McCarran-Ferguson Act, that "a carefully constructed three-part

test must be satisfied before the Act can apply.  This examination must be implemented on a

case-by-case basis, and the result will be dictated by the precise statutes involved in each case.").

To the extent the Liquidator may be understood to contend that this civil forfeiture action

conflicts with the statutory scheme of Illinois's insurance laws, he fails to meet the exacting

standard of impairment of a state law by a federal law under McCarran-Ferguson.  The Supreme

Court has held that "when federal law does not directly conflict with the state regulation, and

when application of the federal law would not frustrate any declared state policy or interfere with

a State's administrative regime, the McCarran-Ferguson Act does not preclude its application."

Humana Inc. v. Forsyth, 525 U.S. 299, 309 (1999)  Other than protesting that he will not have

access to the funds required to fulfill insurance obligations to AEG and ECI clients, the

Liquidator points to no other purported conflict posed by the civil forfeiture statute.  It is far from

clear, however, that the impact of the forfeiture action on assets available to the Liquidator, as

part of the insolvent companies' estates, would amount to an impairment, under McCarran-Ferguson, of Illinois laws and regulations concerning the liquidation of insolvent insurance companies.  See, e.g., Suter, 223 F.3d at 161 (finding that the possibility that a federal arbitration of contract rights pursuant to an international convention could result in a smaller estate of insolvent insurance company did not impair the New Jersey Liquidation Act, within the meaning of McCarran-Ferguson).  Moreover, the Liquidator cites no caselaw, either persuasive or binding, in which a court has determined that any state statute reverse preempts the federal forfeiture laws.

For these reasons, the Court finds that the Liquidator has not demonstrated that it is entitled to summary judgment based on the reverse preemption of this civil forfeiture action under 15 U.S.C. § 1012(b).

3.  Innocent Owner Defense

The Liquidator also raises the affirmative defense provided by 18 U.S.C. § 983(d), which saves an innocent owner's interest in property from forfeiture.  18 U.S.C. § 983(d)(1) ("[a] innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."). The claimant bears the burden of proving that he is an innocent owner by a preponderance of the evidence.  Id.  The statute defines "innocent owner" in two alternative ways, depending on whether the property interest is acquired by the claimant before or after the illegal conduct giving rise to the forfeiture. 18 U.S.C. § 983(d)(2) & (3).  Here, the Liquidator invokes the provision applicable to a property interest already in existence at the time of the illegal conduct, 18 U.S.C. § 983(d)(2), on the basis that the unlawful wire transfers, i.e., the offenses triggering forfeiture,

occurred after AEG and ECI were in possession of the funds turned over by their clients.[5]  That provision defines "innocent owner" as

> An owner who –
>
> (i)      did not know of the conduct giving rise to forfeiture, or
>
> (ii)     upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

18 U.S.C. § 983(d)(2)(A).

The Liquidator has not, and cannot as a matter of law, meet his burden of demonstrating that AEG and ECI, in whose shoes he stands, were the innocent owners of the funds constituting the Defendant property.  While the uncontroverted facts of this case make clear that the funds held in the AEG and ECI accounts were improperly diverted to the Leading Edge accounts by Hilly, they make equally clear that AEG and ECI acquired the funds in the first instance through a fraud they perpetrated on their clients and participated in the diversion of the funds to the Leading Edge accounts.  AEG and ECI came into possession of the funds constituting the Defendant property by falsely representing to their clients that, in exchange for a fee, they would perform the services of securing workers' compensation insurance for these employer clients and of collecting and remitting to the IRS the employer clients' trust fund and payroll taxes.  It was under these pretenses that AEG and ECI received the money now constituting at least some of the Defendant property.  Then, the record clearly shows that rather than direct these funds for the purpose that the AEG and ECI clients were contractually promised, Hilly directed AEG and/or ECI to wire the funds to the Leading Edge accounts, committing the offense giving rise to this

---

[5] In fact, the Liquidator rejects any reliance on the alternative basis of demonstrating "innocent owner" status, which requires that the claimant demonstrate that he is a "bona fide purchaser or seller for value" and "did not know and was reasonably without cause to believe that the property was subject to forfeiture."  18 U.S.C. § 983(d)(3)(A)(i) & (ii).

forfeiture action.  The Liquidator proffers no proof whatsoever that AEG and ECI did not know

that the funds they were supposed to use to purchase workers' compensation coverage or to pay

taxes on behalf of clients were not directed to their lawful destination but instead transferred to

bank accounts held by another company.  Nor is there any evidence that once AEG and ECI

became aware that the money they had acquired from clients was improperly wired to the

Leading Edge accounts, AEG and ECI did anything at all to stop the fraudulent wire transfers.

There is no evidence that AEG and ECI gave timely notice to law enforcement of information

concerning Hilly's diversion of the money to the Leading Edge accounts and at least make a

good faith effort to prevent such illegal use of the money.  See 18 U.S.C. § 983(d)(2)(B)

(describing ways in which one claiming to be an innocent owner of seized property may show

that it did all it reasonably could to terminate unlawful use of the property).  Indeed, AEG and

ECI, owned and controlled by Hilly himself, were the very instrumentalities through which the

conduct giving rise to forfeiture was perpetrated and accomplished.  It is uncontroverted that

they participated in the wire fraud.  The Liquidator himself has asserted as much, attaching to

the Verified Complaint for Liquidation a copy of the Hilly Indictment, which states that Hilly

"directed and instructed AEG [and] ECI . . . to divert, via wire transfers, the client-companies'

Federal Employment Taxes which were required to be remitted to the Internal Revenue Service

to [the]bank account at Bank of America held in the name of Leading Edge . . . ." (Verified

Compl. For Liquidation, Ex.7, ¶ 13, attached to Gov't Br. in support of Motion To Strike.)

Similarly, the Liquidator's Complaint against Leading Edge in the Illinois civil suit resulting in a

default judgment alleged as follows:

> 12. Between the dates of February 24, 2006 and November 28,
> 2006, Hilly directed and instructed ECVI [ECI] to wrongfully transfer at

17

least $7,400,290.04 from the ECVI bank account in Illinois to a Leading
Edge bank account in New York.

13. Between the dates of March 3, 2006 and November 28, 2006,
Hilly directed and instructed AEG to wrongfully transfer at least
$6,964,469.60 from the AEG [b]ank account in Illinois to a Leading Edge
[b]ank account in New York.

(Decl. of Michael W. Basil in Support of the Liquidator's Motion for Summary Judgment, Ex.

2.) Putting aside that the record is devoid of evidence that would support the Liquidator's

statutory burden, the Liquidator's argument that AEG and ECI are innocent owners of the funds

in the Leading Edge accounts defies common sense.

The Liquidator has maintained that before the commission of the fraudulent wire

transfers by Hilly, the seized funds had lawfully been in the possession of AEG and ECI and that

therefore, AEG's and ECI's ownership interest in the funds precedes the Government's interest,

which can only relate back in time to the moment of the acts constituting wire fraud.  This

sequence, the Liquidator argues, renders AEG and ECI the rightful owners of the Defendant

property and defeats the Government's attempt to forfeit the property.  Assuming, as the

Liquidator argues, that at some point in time, before Hilly's two fraudulent schemes were

consummated by the diversion of client funds to the Leading Edge account, the seized funds had

lawfully been in the bank accounts belonging to AEG and ECI, the Liquidator's argument that

AEG's and ECI's first-in-time ownership defeats forfeiture nevertheless fails.  He provides no

statutory or decisional authority for this argument, and moreover, completely disregards the civil

forfeiture statute's scheme for protecting "a property interest in existence at the time the illegal

conduct giving rise to forfeiture took place" – i.e., the requirements for satisfying the innocent

owner defense.  18 U.S.C. § 981(d)(2)(A).  As set forth above, the Liquidator points to no

evidence that AEG and/or ECI either did not know of Hilly's wire transfers to the Leading Edge

accounts or took all reasonable steps under the circumstances to terminate such wrongful use of

the property purportedly intended to secure workers' compensation insurance for clients or

satisfy clients' tax obligations to the IRS.

Moreover, his heavy reliance on the Illinois state court decision in <u>McRaith v. BDO

Seidman, LLP</u>, 391 Ill. App.3d 565 (Ill. App. 2009) is misplaced.  The Liquidator argues that

<u>BDO Seidman</u> supports the proposition that neither he nor AEG and ECI can be imputed with

Hilly's bad acts and may therefore defeat forfeiture as "innocent owners."  <u>BDO Seidman</u>,

however, is both legally and factually distinct from this action.  The federal civil forfeiture

statute was not at issue in that case.  Rather, the case involved professional negligence and

breach of contract claims brought against an accounting firm by the Director of the Illinois

Division of Insurance (the same claimant challenging the instant forfeiture), in his capacity as

liquidator of insolvent insurance companies.  <u>Id.</u> at 566.  An officer of the companies defrauded

the companies by removing assets from the insurance companies that should have been used to

pay policyholder claims and ultimately drained the companies of all their assets.  <u>Id.</u> at 571-72.

The defendant accounting firm argued that the suit must be barred because, under the sole-owner

doctrine, the corporate officer's misconduct should be imputed to the insurance companies and

thus to the liquidator, which by imputation were tortfeasors themselves.  <u>Id.</u> at 586.  The firm

also argued that the insurance companies were *in pari delicto* with the owner, the individual

corporate agent who diverted funds.  <u>Id.</u>  The Illinois Appellate court rejected these arguments,

finding that the officer's illegal conduct could not be imputed to the insurance companies, which

in its view, did not perpetrate the fraud but rather were victimized by it.  <u>Id.</u> at 591-92. It

reasoned that unlike a typical corporation, which could be considered the owner's tool to defraud third parties, an insurance company encompasses the interests of its policyholders, which cannot be considered willing participants in the fraud.  Id.  It also found, based on Illinois public policy, that the imputation doctrine should not apply to bar the liquidator's claims, reasoning that the law assigned the liquidator a special role and responsibility in protecting the state's insurance policyholders and creditors of the insurance companies.  Id. at 594-95.  The BDO Seidman court likewise concluded that it would be "illogical" to hold the liquidator *in pari delicto* with the insolvent insurance companies and/or their wrongdoing agent because the liquidator is vested by Illinois statute with rights and duties to protect the insurance industry and the public interest.  Id. at 595. Finally, it found that imputation of wrongdoing based on the sole owner doctrine did not apply because the record did not demonstrate that the owner had "unbreakable communication" with the insurance companies or that they benefitted from his wrongdoing.  Id.

This federal forfeiture action, in contrast, presents none of these issues.  The Court's determination that the Liquidator has not met his burden to defeat the forfeiture of the Defendant property does not turn on the imputation of Hilly's wrongdoing to AEG and ECI, and derivatively to the Liquidator.  Instead, it hinges on the fact that any claim the Liquidator may have is purely derivative of the rights that AEG and ECI would have to assert based upon an innocent owner defense.  If they could not validly assert and substantiate such a contention, then neither can he.  The Court has considered the wrongdoing of AEG and ECI themselves. The record demonstrates that these companies were not victimized by the fraud; they engaged in the two fraudulent schemes underlying the wire fraud at issue, that is, the workers' compensation *and* tax fraud.  Nor, in this case, was the fraud executed by a rogue employee of AEG and ECI

but by their sole owner and authorized agent, Hilly.  To the extent that the BDO Seidman

decision implicates Illinois public policy concerning the special role of the Liquidator in the

regulation and protection of the state's insurance industry, such a concern cannot drive the

Court's decision here. For purposes of the federal forfeiture statute, the Liquidator must be

treated as would any other claimant seeking to assert the innocent owner defense.  Moreover,

such policy considerations are, in the context of a forfeiture proceeding, more appropriately

addressed by the Attorney General as part of the remission process established by Congress to

disburse forfeitable property to all who may have an interest in the property.[6]

In short, the Liquidator simply has not demonstrated, as he must on his motion for

summary judgment, that the evidence in the record proves that AEG and ECI, from which his

rights and remedies derive, did not know of the fraudulent schemes or, if aware of them, took all

reasonable steps to terminate the wrongdoing.  He has not, in other words, established that they

are or were innocent owners within the meaning of the federal civil forfeiture statute.

4.  Other Arguments Raised by the Liquidator

In the interest of addressing the points raised in the Liquidator's motion

comprehensively, the Court notes that he argues, outside the federal statutory scheme for civil

forfeiture, that the Defendant property is not subject to forfeiture because the Illinois Court's

2009 default judgment against Leading Edge in favor of the Liquidator gives him a superior

interest in the Defendant property.  This is so, the Liquidator maintains, based on the rule of first

---

[6] Indeed, the Court notes that contrary to the Liquidator's argument that allowing the Defendant property to be forfeited to the Government will defeat the interests of the insurance fraud victims and leave them without a remedy, the Department of Justice has an established process for persons with an interest in forfeited property, including victims of an offense underlying the forfeiture, to file a petition for remission of property with the Attorney General. See 28 C.F.R. §§ 9.1, 9.4 & 9.8.  The remission process would permit the equitable distribution of the Defendant property to victims of *both* fraudulent schemes underlying this forfeiture, including the various AEG and ECI clients which have sustained losses as a result the failure of AEG and/or ECI to remit to the IRS the payroll and trust fund taxes collected from those clients.

in time, first in right and, alternatively, on the equitable lien the Liquidator holds against the property by virtue of the judgment. These arguments are completely unavailing. First, as the Government correctly points out, the 2009 default judgment did not grant an equitable lien on the funds transferred from AEG and ECI to the Leading Edge accounts. Thus, that argument, which would suffer from other deficiencies, need be considered no further. Second, the default judgment entered by the Illinois Court is a money judgment for damages against Leading Edge. Though the Liquidator's 2009 default judgment clearly pre-dates any judgment that would be entered in this case, the Government is not a competing civil creditor of Leading Edge, nor does it through this action aspire to be. This is a forfeiture action against the Defendant property, not against Leading Edge, and it is governed by federal forfeiture law. The governing statute, 18 U.S.C. § 981, clearly provides that the Government's ownership interest in the Defendant property relates back to the commission of the offense giving rise to forfeiture, that is, the wire transfers made prior to Hilly's December 2006 arrest. The Liquidator provides no authority, of a binding or persuasive nature, that his 2009 default judgment against Leading Edge could thwart a proper forfeiture under § 981 of the Defendant property, simply because that property had been held in bank accounts in the name of Leading Edge.

## III.  CONCLUSION

For the reasons discussed, the Court concludes the Liquidator has not met his burden of establishing the affirmative defense provided by the federal civil forfeiture statute, the innocent owner defense. Nor has he established that this action is time-barred or precluded by the McCarran-Ferguson Act. Accordingly, the Court holds that his motion for summary judgment

must be denied.  Based on the Government's adequate showing of its entitlement to forfeiture

under 18 U.S.C. § 981, the Court grants summary judgment in its favor and will accordingly

enter a final order of forfeiture.   An order embodying these rulings will be filed.


         ____s/ Stanley R. Chesler____
         STANLEY R. CHESLER
         United States District Judge


Dated: June 18, 2013